UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BYRON GOOD VOICE ELK, | Civ. 12-4198-KES |
| Plaintiff, | |
| vs. | |
| CORRECTIONAL OFFICER PERRETT; CORRECTIONAL OFFICER NEZIREVIC; LIEUTENANT WENDLING; MEDICAL STAFF KITTY; HEALTH SERVICE; and MENTAL HEALTH, all in their individual and official capacities, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | |

Plaintiff, Byron Good Voice Elk, is an inmate at the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota. On November 16, 2012, plaintiff filed a pro se civil rights lawsuit pursuant to 42 U.S.C. § 1983, alleging that defendants used excessive force against him, engaged in retaliation, failed to protect him from violence, and acted with deliberate indifference toward his serious medical needs, all in violation of the Eighth Amendment. Docket 1 at 3–7. Good Voice Elk also alleged that defendants discriminated against him based on his disability, thus violating the Americans with Disabilities Act (ADA). Docket 1 at 8.

The court screened Good Voice Elk's complaint pursuant to 28 U.S.C. § 1915. Docket 13. In doing so, the court construed his retaliation claim as an

excessive force claim and characterized his ADA claim as a prison conditions claim. The court then dismissed one of Good Voice Elk's deliberate indifference claims and his ADA/prison conditions claim for failure to state a claim upon which relief may be granted. Defendants answered, denied all claims against them, and asserted various affirmative defenses. Docket 21.

On April 18, 2013, the court granted Good Voice Elk leave to amend his complaint. Docket 31. Good Voice Elk filed an amended complaint on May 10, 2013, this time alleging one ADA claim and one excessive force claim. Docket 32. Once again, the defendants answered, denied all claims against them, and reasserted various affirmative defenses. Docket 33. Defendants now move for summary judgment. Docket 34. Good Voice Elk has not responded to the motion for summary judgment and the time for response has passed. The court has considered the arguments set forth by defendants, and for the reasons set forth herein, the court grants defendants' motion for summary judgment.

**FACTUAL BACKGROUND**

According to defendants' statements of undisputed material facts, which have not been objected to by Good Voice Elk[1]:

---

[1] Pursuant to Local Rule 56.1.D, "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts."

Plaintiff is an inmate in the custody of the South Dakota Department of Corrections (DOC). Docket 36 at ¶ 1. He is incarcerated at SDSP. Docket 36 at ¶ 1. On the evening of June 1, 2012, Officer Nick Anderson discovered Good Voice Elk and inmate Jeremiah Hart "holding each other in an embrace with their heads obscured in what appeared to be a kissing position with each other." Docket 35-1 at ¶ 3; Docket 36 at ¶ 17. Because it is a major prohibited act for any inmate to "engage in consensual sexual contact and/or unnatural acts or propositioning sexual contact with any person," Officer Anderson radioed for backup and directed Good Voice Elk and Hart to "cuff up." Docket 35-1 at ¶¶ 4–5; Docket 35-6; Docket 35-8; Docket 36 at ¶¶ 17–19.

Sergeant Jeremy Wendling[2] arrived on the scene shortly thereafter. Docket 35-1 at ¶ 6; Docket 35-5 at ¶ 4; Docket 36 at ¶¶ 20–21. When Hart and Good Voice Elk denied any wrongdoing, Sergeant Wendling "asked Officer Anderson to step out of the section so [they] could further discuss the matter." Docket 35-5 at ¶¶ 4–5; Docket 35-7 at 4. Based on Officer Anderson's assertion that the two inmates had been engaging in prohibited conduct, Sergeant Wendling returned to Hart and Good Voice Elk's cell and directed Hart and Good Voice Elk to "cuff up." Docket 35-5 at ¶ 6; Docket 35-7 at 4; Docket 36 at ¶ 21. He then "explained to both inmates that they were going to

---

[2] Sergeant Wendling is the "Officer in Charge" on the A-Floor section of the Jameson Annex, where the cell extraction took place. Docket 35-5 at ¶ 2.

3

be 'locked up' and placed in segregation as a result of Officer Anderson having witnessed them kissing." Docket 35-5 at ¶ 6; Docket 35-7 at 4. Despite repeated directives from Officer Anderson, Sergeant Wendling, and Officer Underberg,[3] the inmates refused to cuff up, and instead stated that they were "suiting up the team." Docket 35-1 at ¶ 6; Docket 35-5 at ¶ 8; Docket 35-6; Docket 35-7 at 4; Docket 35-10; Docket 36 at ¶ 22.

Sergeant Wendling next called Associate Warden Wagner to inform her of the situation. Docket 35-5 at ¶ 9; Docket 36 at ¶ 24. Associate Warden Wagner instructed Sergeant Wendling to "give them a couple more directives," and if the inmates still refused to cuff up, Associate Warden Wagner authorized the use of cap stun. Docket 35-5 at ¶ 9; Docket 35-7 at 4; Docket 36 at ¶ 24. Sergeant Wendling returned to the jail cell and gave Hart and Good Voice Elk additional orders to cuff up. Docket 35-5 at ¶ 11; Docket 35-7 at 4; Docket 36 at ¶ 26. Sergeant Wendling also "warned them that cap stun would be deployed into the cell if they persisted in their refusal to cooperate." Docket 35-5 at ¶ 11; Docket 35-7 at 4; Docket 36 at ¶ 26.

Because Hart and Good Voice Elk still refused to cuff up, Sergeant Wendling "deployed one burst of cap stun into their cell." Docket 35-5 at ¶ 12;

---

[3] Officer Anderson and Sergeant Wendling called Officer Underberg up to the cell "in hopes he could convince the inmates to obey the directive that they cuff up." Docket 35-5 at ¶ 8; Docket 35-10.

Docket 36 at ¶ 27. A short time thereafter, Hart and Good Voice Elk complied with the directive and cuffed up. Docket 35-5 at ¶ 12; Docket 35-8; Docket 36 at ¶ 28. But as soon the cell door was opened, Hart "came out and started kicking staff." Docket 35-1 at ¶ 9; Docket 35-4 at ¶ 4; Docket 35-5 at ¶ 13; Docket 35-7 at 4; Docket 36 at ¶ 29. When Officer Preston Perrett ordered Hart to cease his resisting, Hart responded by shoving Officer Perrett with his shoulder. Docket 35-4 at ¶ 5; Docket 36 at ¶ 30. Sergeant Wendling therefore called a "Code Red, Code Three," which "signified that a staff member was in need of assistance and required an 'all hands' response by correctional officers." Docket 35-5 at ¶ 14; Docket 36 at ¶ 33.

Officers Perrett and Anderson then took Hart to the ground "with the proper force to gain control of the situation," but Hart continued to kick and "also grabbed [Officer Perrett] by the testicles and started to squeeze." Docket 35-4 at ¶ 6; Docket 35-5 at ¶ 15; Docket 35-7 at 4; Docket 35-11; Docket 36 at ¶¶ 31–32. Officer Anderson eventually pinned Hart's legs together and held them against his body while Officer Amel Nezirevic[4] assisted in putting iron leg restraints on Hart. Docket 35-1 at ¶¶ 11–12; Docket 35-3 at ¶ 5; Docket 35-7 at 4; Docket 35-8 at 2; Docket 36 at ¶¶ 34–35. "Once restrained, Hart was

---

[4] Good Voice Elk originally listed "Nearovic" as a defendant in this case. The defendant has since corrected the error by indicating in various documents that his last name is "Nezirevic." Docket 33 at ¶ 4; Docket 35-3.

5

removed from the unit and taken to be decontaminated." Docket 35-1 at ¶ 13; Docket 36 at ¶ 35.

According to defendants, Good Voice Elk was at no time "involved in the unplanned use of force on Inmate Hart." Docket 35-1 at ¶ 14; Docket 36 at ¶ 37. Although Good Voice Elk did verbally threaten the officers, he at no time physically assaulted the officers. Docket 35-1 at ¶ 14; Docket 35-5 at ¶ 18; Docket 36 at ¶ 37. Consequently, Good Voice Elk was not the victim of the use of unplanned physical force, nor was he ever hit, kicked, or slammed to the floor or wall. Docket 35-1 at ¶¶ 14–15; Docket 35-3 at ¶¶ 7–8; Docket 35-4 at ¶ 9; Docket 35-5 at ¶¶ 18–19, 21; Docket 36 at ¶¶ 37–38. Once the officers restrained Hart, Good Voice Elk was escorted out, decontaminated, and examined by health services. Docket 35-7 at 4; Docket 36 at ¶¶ 36–37. Medical staff detected no injuries to Good Voice Elk. Docket 35-1 at ¶ 16; Docket 35-2 at ¶ 5; Docket 35-4 at 10; Docket 35-8 at 2; Docket 36 at ¶ 36.

Good Voice Elk returned to health services on June 5, 2012, with "chronic knee pain stemming from an automobile accident occurring approximately ten years earlier." Docket 35-2 at ¶ 6; Docket 36 at ¶ 40; Docket 39-2. During the appointment, Good Voice Elk never "complain[ed] of any injuries stemming from the alleged trauma inflicted during the cell extraction on June 1, 2012." Docket 35-2 at ¶ 6. Good Voice Elk was seen again on June 16, 2012, this time with concerns about a rash he was

6

experiencing after eating rice. Docket 35-2 at ¶ 7; Docket 36 at ¶ 41; Docket 39-3. Good Voice Elk was seen by health services a third time on June 27, 2012, with complaints of shortness of breath. Docket 35-2 at ¶ 8; Docket 36 at ¶ 42; Docket 39. During these medical examinations, Good Voice Elk denied any recent trauma or falls and exhibited no signs of trauma. Docket 35-2 at ¶¶ 8–9; Docket 36 at ¶ 42; Docket 39. When Good Voice Elk visited the hospital on July 23, 2012, he maintained that he had no problems with recent trauma. Docket 35-2 at ¶ 9; Docket 39-1.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence,[5] viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg, Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see also* Fed. R. Civ. P. 56(a). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotations and citations

---

[5] The evidence includes the pleadings, depositions, documents, electronically stored information, stipulations, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c).

7

omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although "the court is required to . . . give [the nonmoving] party the benefit of all reasonable inferences to be drawn from the underlying facts," *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980), the nonmoving party may not "rest upon mere denials or allegations." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "set forth specific facts sufficient to raise a genuine issue for trial." *Id.*

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Moreover, the court is not "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional

rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980).

**DISCUSSION**

Defendants assert that Good Voice Elk's claims[6] must be dismissed for failure to state a claim upon which relief may be granted. Docket 34. In Good Voice Elk's first claim, he alleges that defendant Nezirevic violated the ADA by inflicting various physical and mental injuries upon Good Voice Elk. Docket 32 at 2. In his second claim, Good Voice Elk alleges that defendant Perrett used excessive force to extract him from his jail cell on June 1, 2012, thus violating the Eighth Amendment's prohibition against cruel and unusual punishment. Docket 32. The court will consider each cause of action in turn.

---

[6] Good Voice Elk's original complaint contained six causes of actions—two excessive force claims, one failure to protect claim, two claims for deliberate indifference to a serious medical need, and one ADA claim, which the court construed as a prison conditions claim. Docket 1. The court screened Good Voice Elk's original complaint and dismissed his deliberate indifference claim against health services, as well as his ADA/prison conditions claim. Docket 13. Good Voice Elk then filed an amended complaint wherein he asserted just two causes of action. Docket 32. The court will only consider the causes of action iterated in Good Voice Elk's amended complaint. *See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("It is well-established that an amended complaint supercedes [sic] an original complaint and renders the original complaint without legal effect.").

**I.  Officer Nezirevic Did Not Violate the ADA When Extracting the Plaintiff from His Jail Cell.**

"Title II of the ADA, . . . prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of the services, programs, or activities of a public entity." *Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999). "A qualified individual with a disability is defined as any person who 'meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the public entity.' " *Id.* (citing 42 U.S.C. § 12131(2)). As held by the Supreme Court of the United States, state prisons qualify as a "public entity" and must therefore comply with Title II of the ADA. *Id.* (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)). "To state a prima facie case under the ADA, a plaintiff must show: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability. *Randolph.* at 858 (citations omitted).

In the instant case, Good Voice Elk has not shown that he was a person with a disability on the date of the cell extraction, nor has he proven that he was excluded from a particular benefit for which he was otherwise qualified because of such disability. Rather, Good Voice Elk alleged that he suffered various physical and mental injuries after Officer Nezirevic allegedly slammed Good Voice Elk "up against the wall and proceeded to assult [sic] [him] while

[he] was hand cuffed." Docket 32 at 2. Although Good Voice Elk alleged that he sustained physical and mental injuries, this unsubstantiated information, even if true, is insufficient to prove a claim under the ADA because Good Voice Elk has not proved that he was excluded from a benefit for which he was otherwise qualified. Defendant Nezirevic is therefore entitled to summary judgment.[7]

## II. Officer Perrett Did Not Use Excessive Force in Violation of the Eighth Amendment When Extracting Good Voice Elk from His Jail Cell.

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Inflictions of pain without penological justification "constitute cruel and unusual punishment forbidden by the Eighth Amendment." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offense against society.' " *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the " 'unnecessary and wanton infliction of pain.' "

---

[7] To the extent Good Voice Elk intended to state an excessive force claim rather than an ADA claim against Officer Nezirevic, the court finds that Officer Nezirevic would be entitled to summary judgment on such claim for the reasons set forth in Section II of this order.

11

*Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977))). "What is necessary to establish an 'unnecessary and wanton infliction of pain' . . . varies according to the nature of the alleged constitutional violation." *Id.* at 6 (quoting *Whitley*, 475 U.S. at 320). To determine whether prison officials engaged in the unnecessary and wanton infliction of pain when resolving a prison disturbance, the court considers "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 7 (citing *Whitley*, 475 U.S. at 320–21).

Additional factors the court may consider include the extent of the injury suffered by an inmate, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 8 (quoting *Whitley*, 475 U.S. at 321). The court must then balance these considerations with the fact that " 'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators.' " *Whitley*, 475 U.S. at 321 (quoting *Rhodes*, 452 U.S. at 349).

In the instant case, the unrefuted evidence establishes that Good Voice Elk was discovered engaging in a prohibited act with his cell mate, Jeremiah

12

Hart, and was therefore ordered by a number of prison officials to "cuff up." When Good Voice Elk and Hart repeatedly refused to do so, Officer Wendling, with the permission of Associate Warden Wagner, warned both inmates that their continued refusal to "cuff up" would result in the release of cap stun into their cell. Because Good Voice Elk and Hart persisted in their refusal to follow direct orders, Officer Wendling released cap stun into their cell. Shortly thereafter, Good Voice Elk and Hart were placed in hand cuffs and removed from their cell. Upon removal, Hart began kicking Officers Anderson and Perrett and was therefore taken to the ground and placed in leg restraints. Both inmates were then decontaminated, provided with a change of clothing, and examined by health services, where neither inmate showed evidence of injury.

Based on this unrefuted evidence, it appears that the extent of force used by prison officials against Good Voice Elk during the incident in question was limited to the release of cap stun into Good Voice Elk's cell and the use of hand cuffs to escort Good Voice Elk out of his cell. Given Good Voice Elk's participation in a prohibited act and his repeated refusal to "cuff up," the court finds that prison officials applied force in a good faith effort to maintain or restore discipline. Prison officials tried to temper the severity of a forceful response by repeatedly ordering Good Voice Elk to cuff up and by warning him of the consequences of refusing to comply with such order; prison officials

reasonably perceived Good Voice Elk and Hart to pose a threat to prison security given their refusal to comply with orders and their statement that they were "suiting up the team;" and prison officials used only that amount of force which was necessary to safely extract Good Voice Elk from his cell—an amount of force authorized by the associate warden and in compliance with South Dakota DOC policy. Docket 36 at ¶¶ 24–25. Moreover, health services examined Good Voice Elk immediately after the incident in question and found no evidence of injury. Although Good Voice Elk was seen by medical providers on four occasions in the weeks following the incident in question, Good Voice Elk never complained of an injury stemming from the incident in question. The court therefore finds that Good Voice Elk has failed to show the use of excessive force by any prison official against him. Accordingly, Officer Perrett is entitled to summary judgment.

### III. Good Voice Elk Failed to State a Claim Against Lieutenant Wendling, Medical Staff Kitty, Health Service, and Mental Health.

Although Good Voice Elk listed Lieutenant Wendling, Medical Staff Kitty, Health Service, and Mental Health as defendants in his amended complaint, Good Voice Elk did not allege therein that these defendants violated his constitutional rights. *See* Docket 32. In fact, the only reference made to these four defendants is in the caption of Good Voice Elk's amended complaint. Accordingly, Defendants Wendling, Kitty, Health Service, and Mental Health are entitled to judgment as a matter of law.

**CONCLUSION**

Because Good Voice Elk has not shown that he is a person with a disability or that he was excluded from a particular benefit for which he was otherwise qualified, Officer Nezirevic is entitled to summary judgment on Good Voice Elk's ADA claim. Because the court finds that Officer Perrett applied force in a good faith effort to maintain or restore discipline when extracting Good Voice Elk from his cell, Officer Perrett is entitled to summary judgment on Good Voice Elk's excessive force claim. Finally, because Good Voice Elk has not stated a claim against Defendants Wendling, Kitty, Health Service, and Mental Health, those defendants are entitled to summary judgment.

Accordingly, it is

ORDERED that defendants' motion for summary judgment (Docket 43) is granted.

Dated November 6, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE